Chris L. BOREN, By and Through his next best friends and parents, James BOREN and Toni Boren, James Boren and Toni Boren, Plaintiffs,

v.

CITY OF COLORADO SPRINGS, a Municipal corporation, Neal Stratton, Chief of Police, City of Colorado Springs, Officers Cecil E. Hutcheson, Jerry Lee Steckler, and Michael W. Grys, City of Colorado Springs Police Department, other unknown officers and supervisors of the City of Colorado Springs Police Department, Defendants.

Civ. A. No. 85–K–1643.

United States District Court,
D. Colorado.

Dec. 31, 1985.

Robert C. Erler, Barash & LeHouillier, Colorado Springs, Colo., for plaintiffs.

Gary R. Cowan, Colorado Springs, Colo., for defendants.

## ORDER OF DISMISSAL

KANE, District Judge.

This civil rights action, filed against three Colorado Springs police officers, the City of Colorado Springs, the chief of police, and other unknown officers and supervisors, is brought pursuant to 42 U.S.C. §§ 1983[1] and 1988[2]. Jurisdiction lies under 28 U.S.C. §§ 1343 and 1331. Plaintiffs seek monetary damages for alleged deprivation of Chris Boren's constitutional rights.

Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted. They argue that none of the allegations amount to a violation of plaintiff Chris Boren's constitutional rights. They also maintain that the

---

**1.** 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

By its terms, of course, the statute creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere.

**2.** 42 U.S.C. § 1988 provides for attorney fees in civil rights cases brought to enforce the 14th Amendment.

court should decline to exercise jurisdiction over counts two and three under the doctrine of pendent jurisdiction, and that the claims of negligence against the City of Colorado Springs are not actionable under 42 U.S.C. § 1983.

## I.

### Background

The amended complaint alleges that on January 25, 1985, about 9:00 p.m., Chris Boren left a store with a can of soda in his hand and drove off on his three-wheeled motorcycle. Three police officers in an unmarked police van pursued him without identifying themselves and without probable cause. When plaintiff saw a marked, unoccupied police cruiser parked in front of a house, he ran up to the front porch in an attempt to find the police officer. When he saw one of the officers, dressed in civilian clothes, step out of the van, he jumped over the porch in fear, injuring his left knee and left leg.

The first cause of action asserts that the acts of the officers in chasing Chris Boren without identifying themselves and without probable cause violate his constitutional rights. Plaintiffs also charge that the failure of the city, chief of police, and supervisors properly to train and select police officers and establish procedures and guidelines caused the violation of Chris Boren's constitutional rights. The second cause of action charges (1) that all defendants were negligent in not using reasonable care before the initiation of the chase, and (2) that all defendants except the three officers were negligent in not establishing the proper guidelines, training, and supervision for police officers which could have prevented Chris Boren's injuries. The third cause of action complains that the three officers, in chasing and harassing plaintiff Chris Boren, acted in willful and wanton disregard of his rights and feelings. Plaintiffs seek compensatory damages of $500,000.00 and punitive damages in a like amount.

## II.

### Plaintiffs' § 1983 Claims

The complaint attempts to set forth both § 1983 claims (in the first cause of action) and negligence claims (in the second cause of action) against all parties. The § 1983 claim against the three named officers centers around the chase. The § 1983 claim against the City of Colorado Springs, the chief of police, and the supervisors, alleges they are responsible for the selection and training of the three named officers and that they were in a position to establish procedures and guidelines which could have been utilized to prevent violation of plaintiff Chris Boren's constitutional rights. I must examine the § 1983 claims against each defendant to determine whether any claims can withstand defendants' motion to dismiss.

A § 1983 claim should not be dismissed unless it clearly appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Kennedy v. Meacham*, 540 F.2d 1057, 1060 (10th Cir.1976); *Holder v. Claar*, 459 F.Supp. 850, 852 (D.Colo.1978); *Smith v. Ricker*, No. 82–K–1499 (D.Colo. July 11, 1984) (Kane, J.). Two elements are required to state a claim for relief under § 1983: (1) the defendant acted under color of state law, and (2) the defendant's actions deprived the plaintiff of some right, privilege or immunity secured by the constitution or the laws of the United States. *See Wise v. Bravo*, 666 F.2d 1328, 1331 (10th Cir.1981).

A. *Plaintiffs' § 1983 claims against the three named officers.*

Defendants do not dispute that the three named officers were acting in their capacity as Colorado Springs police officers. Thus, the first element for a § 1983 claim is met. Defendants maintain, however, that plaintiff was not deprived of any right secured by the constitution or laws of the United States.

The gist of plaintiffs' complaint is repeated in their written response to the defendants' motion to dismiss, *viz.*, that certain officers, "in an unmarked van, without a warrant, without probable cause, without identifying themselves, stalked, chased, blocked the path of the Defendant (sic), and by their actions put the Defendant (sic) in fear of his life, which caused him to flee and to seek help from another police officer, and in doing so the Defendant (sic) fell and injured himself seriously." Even as stated, and taking the allegations as true and in a light most favorable to the plaintiffs as I am obliged to do, it is obvious that the proximate cause of Chris Boren's injuries was his fall from a porch which was caused by his flight from a situation in which he became frightened. It is stated that he became frightened because of the actions of the police officers. As best I am able to determine, the plaintiffs are asserting that a minor child has the constitutional right not to be put in fear by the actions of police officers; that Chris Boren was so put in fear and that he suffered injuries as a result thereof. There are no allegations of contact, assault or battery.

In *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), the Supreme Court made two points which have endured beyond its decision in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). First, the threshold question in § 1983 cases is whether a Fourteenth Amendment violation exists. Second, § 1983 creates no new substantive rights; it simply augments the enforcement of the Fourteenth Amendment.

The Fourteenth Amendment[3] protects against deprivation of life, liberty, or property without due process of law. Although the Supreme Court has never attempted to define with exactness the term "liberty," the case law has summarized a variety of interests which can be characterized as liberty interests. *See generally* Annot., 47

L.Ed.2d 975 (1976). It is settled that the liberty interest protected by the Fourteenth Amendment is not limited to freedom from physical or bodily restraint, and includes liberty of mind as well as liberty of action. *Id.* at 982 (citing *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). For example, the freedom to go about one's business is a liberty interest protected by the Constitution. *See Shapiro v. Thompson,* 394 U.S. 618, 629–30, 89 S.Ct. 1322, 1328–29, 22 L.Ed.2d 600 (1969).[4] Perhaps the most expansive view of liberty is set forth in *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923):

> Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and, generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men.

262 U.S. at 399, 43 S.Ct. at 626, 67 L.Ed. at 1045.

The Supreme Court, however, has not sanctioned indiscriminate expansion of the scope of § 1983 actions. In *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Court cautioned:

> [Plaintiff] apparently believes that the Fourteenth Amendment's Due Process Clause should *ex proprio vigore* extend to him a right to be free of injury wherever the State may be characterized as the tortfeasor. But such a reading would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States. We have noted the "constitutional shoals" that confront any attempt to de-

---

**3.** Section 1 of the Fourteenth Amendment provides in pertinent part:
   nor shall any State deprive any person of life, liberty, or property, without due process of law;

**4.** *Shapiro* held that there was no need to ascribe the source of the right to travel throughout the land, without interruption, to a particular constitutional provision.

rive from congressional civil rights statutes a body of general federal tort law, [citation omitted]; *a fortiori* the procedural guarantees of the Due Process Clause cannot be the source for such law.

*Id.* at 701, 96 S.Ct. at 1160.

It is undisputed that a plaintiff must point to "some specific constitutional guarantee safeguarding the interest he asserts has been invaded." *Paul v. Davis*, 424 U.S. at 700, 96 S.Ct. at 1160, 47 L.Ed.2d at 413. Of course, the issue of whether the three police officers were reasonable in pursuing plaintiff may very well be decided in a state cause of action for negligence, but there is no overwhelming reason why a federal court should be involved. I have searched the case reports and did not find a single case, nor was one cited to me by the parties, which supports plaintiffs' contention that a Fourteenth Amendment violation occurred.

It is not necessary in this case to venture into the uncertainties in the relationship between negligence and § 1983 liability. In *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), Justice Rehnquist indicated that negligence can be actionable under § 1983, but only when it is relevant to the constitutional violation asserted. He concluded that the due process clause was not violated by the defendants' conduct. For one thing, there was an adequate tort remedy under state law which the plaintiff could use to seek redress for his loss of property. For another, the plaintiff's loss was not caused by a formal and established procedure, but rather by "random and unauthorized" acts of state employees. Justice Rehnquist emphasized that this due process result was sensible. Otherwise, every injury caused by a state official under color of state law would constitute a due process violation thereby rendering § 1983 a "font of tort law."

Closer to this case is Judge Logan's opinion in *Major v. Benton*, 647 F.2d 110 (10th Cir.1981). That case involved an inmate's death resulting from alleged negligence by prison officials in failing to formulate safety measures and safe conditions for digging a ditch. I quote from Judge Logan's opinion at length:

Analogizing from *Baker v. McCollan*, it is clear that a death resulting from the negligent action of a state official does not in itself raise a constitutional claim. In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), plaintiff claimed that the circulation of his photograph by police as a potential shoplifter deprived him of his liberty without due process of law. The Supreme Court noted that if this postulate were accepted "it would be very difficult to see why the survivors of an innocent bystander mistakenly shot by a policeman or negligently killed by a sheriff driving a government vehicle, would not have claims equally cognizable under § 1983." 424 U.S. at 698, 96 S.Ct. at 1159. It quoted with approval Justice Douglas' observation in *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945), that although a prisoner has been assaulted or even murdered by state officials it does not necessarily mean he has been deprived of any constitutional rights. 424 U.S. at 699, 96 S.Ct. at 1159. The Court held that the Due Process Clause does not extend a right to be free from the torts of state officials. Instead, specific constitutional guarantees must be implicated to give rise to due process protection. 424 U.S. at 700–02, 96 S.Ct. at 1160–61.

*Id.* at 113.

It is not, of course, up to me to make law or determine policy. Under some circumstances negligence can trigger a § 1983 violation; under others intent is required and, under some, state of mind is wholly immaterial. My reading of the authorities leads me to conclude that some kind of conduct must be a cause of a constitutional violation and that while specific intent to deprive one of a constitutional right is never required, there must be a nexus between the wrong done and the purpose for which the statute was intended. The statute was enacted, according to

*Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled by Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), because of the lack of enforcement by states of Fourteenth Amendment rights because of prejudice, intolerance, neglect or otherwise. Clearly, its intent was not to extend federal jurisdiction to every tort committed by any state official. Defendants' motion to dismiss for failure to state a claim under § 1983 is granted.

B. *Plaintiffs' § 1983 claims against the City of Colorado Springs and the Police Department.*

▇ The city's police department is merely a vehicle through which the city government fulfills its policing functions and is not a proper party defendant. *See, e.g., Martinez v. Winner,* 771 F.2d 424 (10th Cir.1985); *Shelby v. City of Atlanta,* 578 F.Supp. 1368 (N.D.Ga.1984). The police department, therefore, is dismissed from the case.

In examining plaintiffs' § 1983 claim against the city, we begin with the same two elements discussed above: (1) the defendant acted under color of state law; and (2) those actions deprived plaintiff of some right secured by the constitution or laws of the United States. As with the three police officers, the first element is undisputed; the city was acting under color of state law.

The liability of municipalities and supervisors, however, requires a more detailed analysis than the liability of the offending officers in this case. The courts have developed various approaches to standards for § 1983 liability. The various approaches all require the initial proof that there has been a deprivation of a plaintiff's constitutional right; the failure to meet that requirement has already been addressed in the section regarding § 1983 liability of the officers. Nonetheless, I think it is important to rule on the issues implicit in the concept of vicarious liability.

The Supreme Court has made it clear that municipal liability cannot be premised on the mere fact that a municipality employs an offending official or on theories akin to *respondeat superior.* Municipal liability can be imposed only if the injuries are inflicted pursuant to government "policy or custom." *Monell v. New York City Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). The addition of this requirement that the policy be "the moving force of the constitutional violation," *id.* at 694, 98 S.Ct. at 2038, is the critical additional factor in determining municipal liability under § 1983.

Even the Supreme Court, however, has had difficulty in defining the term "policy," as evidenced by *City of Oklahoma City v. Tuttle,* —— U.S. ——, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985):

> To establish the constitutional violation in *Monell* no evidence was needed other than a statement of the policy by the municipal corporation, and its exercise; but the type of "policy" upon which the respondent relies, and its causal relation to the alleged constitutional violation, are not susceptible to such easy proof. In the first place, the word "policy" generally implies a course of action consciously chosen from among various alternatives; it is therefore difficult in one sense even to accept the submission that someone pursues a "policy" of "inadequate training," unless evidence adduced which proves that the inadequacies resulted from conscious choice—that is, proof that the policymakers deliberately chose a training program that would prove inadequate. And in the second place, some limitation must be placed on establishing municipal liability through policies that are not themselves unconstitutional.... At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged.

—— U.S. at ——, 105 S.Ct. at 2436.

Although the Supreme Court left no doubt regarding the affirmative link re-

quirement, "there may be many ways of proving the existence of a municipal policy or custom that can cause a deprivation of a constitutional right." *Tuttle*, —— U.S. at ——, 105 S.Ct. at 2441 (Brennan, J., concurring). A policy can be implied from the city's actions or inactions before the alleged misconduct took place, although "the scope of § 1983 liability does not permit such liability to be imposed merely on evidence of the wrongful actions of a single city employee not authorized to make city policy." *Id.* *See also Rymer v. Davis*, 754 F.2d. 198, *vacated* —— U.S. ——, 105 S.Ct. 3518, 87 L.Ed.2d 646, *affirmed on remand*, 775 F.2d 756 (6th Cir.1985). A custom or policy may include a municipality's failure to train, supervise, or discipline its police force. *Varela v. Jones*, 746 F.2d 1413, 1418 (10th Cir.1984). *Monell* also indicated that a custom may be inferred when gross negligence in the training of a police force is found, as long as the causal relationship between the failure to train and the conduct of police officers is demonstrated. *See Rymer v. Davis*, 754 F.2d at 201; *Leite v. Providence*, 463 F.Supp 585, 590–91 (D.R.I.1978).

The majority opinion[5] in *Tuttle* has thrown into doubt whether harm allegedly caused by gross negligence in training can meet § 1983's standard of causation. *Oklahoma v. Tuttle*, —— U.S. ——, 105 S.Ct. 2427. As the majority states in that case:

> We express no opinion on whether a policy that itself is not unconstitutional, such as the general "inadequate training" alleged here, can ever meet the "policy" requirement of *Monell*. In addition, even assuming that such a "policy" would suffice, it is open to question whether a policymaker's "gross negligence" in establishing police training practices could establish a "policy" that constitutes a "moving force" behind subsequent unconstitutional conduct, or whether a more conscious decision on the

part of the policymaker would be required.

*Id.* at ——, n. 7, 105 S.Ct. at 2436, n. 7. After careful analysis of *Tuttle*, the First Circuit, in a chase culminating in a shooting death, has considered whether lack of guidance for undertaking an automobile chase provides evidence showing a policy of inadequate training. The case, however, involved ten officers and three separate shootings. The court laid heavy emphasis on the widespread activity which distinguished this case from *Tuttle*. *See Kibbe v. City of Springfield*, 777 F.2d 801 (1st Cir.1985).

■ An official policy can be inferred from a municipality's omissions as well as from its acts. *Wellington v. Daniels*, 717 F.2d 932 (4th Cir.1983). It can be inferred, for example, where officials had knowledge of a pattern of constitutionally offensive acts by subordinates but failed to take remedial steps. *Turpin v. Mailet*, 619 F.2d 196 (2nd Cir.) *cert. denied* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980). Such omissions, however, are actionable only if they constitute "deliberate indifference" or "tacit authorization" of constitutional injuries. *Id.* at 202. *See also Lenard v. Argento*, 699 F.2d 874 (7th Cir.1983), *cert. denied* 464 U.S. 815, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983); *Popow v. City of Margate*, 476 F.Supp. 1237 (D.N.J.1979); *Smith v. Ambrogio*, 456 F.Supp. 1130, 1136 (D.Conn.1978). In effect, the misconduct is such cases is ratified.

■ Where a municipality completely fails to train its police force or trains its officers in a reckless or grossly negligent manner such that police misconduct is almost inevitable, some courts have found an implicit authorization of § 1983 violations. *See, e.g., Leite v. Providence*, 463 F.Supp. 585 (D.R.I.1978). The courts are generally agreed, however, that inaction or failure to train requires a higher standard than mere negligence in order to meet the § 1983 requirements. Mere failure by a munici-

---

**5.** The majority was comprised of four Justices, Justices Rehnquist, Burger, White, and O'Connor. (Justices Brennan, Marshall and Black-

mun concurred in part with the majority opinion, and concurred in the judgment.)

pality to supervise its employees does not set forth a cause of action under § 1983, unless such failure is so severe as to reach a level of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Owens v. Haas,* 601 F.2d. 1242 (2nd Cir.), *cert. denied* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979). *See also Grandstaff v. City of Borger, Texas,* 767 F.2d 161 (5th Cir.1985).

In *Grandstaff,* the Fifth Circuit specifically addressed the question of inadequate training as cause of the constitutional violation and "doubt[ed] that a finding of 'gross' negligence in that training will always be the ticket to municipal liability." *Id.* at 170. In the next section of its opinion, however, the court addressed the affirmative link question from a different angle:

> (b) The city policy/custom of dangerous recklessness: If there is a reckless disregard for human life and safety prevalent among the city's police officers which threatens the life and security of those whom they encounter, and if that recklessness is attributable to the instruction or example or acceptance of or by the city policymaker, the policy itself is a repudiation of constitutional rights. Where police officers know at the time they act that their use of deadly force in conscious disregard of the rights and safety of innocent third parties will meet with the approval of city policymakers, the affirmative link/moving force requirement is satisfied.

*Id.* The *Grandstaff* court, while uncertain about liability based on gross negligence, held that where "[c]onscious indifference to widespread incompetence or misbehavior [is] more than a matter of extreme negligence and more than a failure to instruct or train," liability should be imposed. *Id.*

▮▮ It is apparent that the courts have not reached agreement on the imposition of *Monell* liability. It is incumbent upon a pleader to show that some standard can be met. Plaintiffs' claim, however, alleges only that the city is liable in failing properly to train, supervise, and establish guidelines for its police officers, which

omission caused plaintiffs' constitutional rights to be violated. Mere negligence is not enough. Where a constitutional violation is not alleged to be part of a pattern of past conduct, a supervisor or a municipality may be held liable only where there is essentially complete failure to train a police force, or training so grossly negligent that future misconduct is almost inevitable. *Hays v. Jefferson County, Kentucky,* 668 F.2d 869 (6th Cir.), *cert. denied* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982); *Owens v. Haas,* 601 F.2d 1242 (2nd Cir.), *cert. denied* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979). Further, it clearly appears from the allegations made that plaintiffs can prove no set of facts which would entitle them to relief against the City of Colorado Springs. For this reason, as well as plaintiffs' failure to prove the violation of a constitutional right, the motion to dismiss plaintiffs' claims against the city is granted.

### C. *Plaintiffs' § 1983 claims against the police chief and supervisors.*

▮▮ Plaintiffs claim that the supervisors of the three named officers breached a duty to plaintiff Chris Boren, which breach was the proximate cause of his injuries, and, therefore, this § 1983 action may be maintained against the supervisors. Generally, liability of supervisors and police chiefs under § 1983 requires the same causation as municipal liability, but the causation need not be due to a "policy or custom." "The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right." *McClelland v. Facteau,* 610 F.2d 693 (10th Cir.1979).

Plaintiffs must provide some evidence of an "affirmative link" between the misconduct complained of and any action by officials. *Id.* at 696. As discussed above, there are several ways to demonstrate the "affirmative link." Some courts have required that the causal link between official inaction and a constitutional violation "be

established from the fact that the subordinate's actions are an implementation of policies or practices endorsed by the supervisor." *Wilkinson v. Ellis*, 484 F.Supp. 1072, 1086 (E.D.Pa.1980) (citation omitted). Others have held that if the police chief or the supervisors failed to perform some duty, and that failure caused the deprivation of a protected right, plaintiffs may recover on their § 1983 claim against the supervisors and police chief. *See Dewell v. Lawson*, 489 F.2d 877 (10th Cir.1974) (cause of action under § 1983 was stated when a complaint alleged the chief of police was liable because of his failure to establish proper procedures or adequately train or supervise personnel, which failure led to the deprivation of plaintiff's constitutional right); *Soto v. City of Sacramento*, 567 F.Supp. 662 (E.D.Cal.1983) (a police chief's liability in a case alleging excessive force by police officers centered around the chief's alleged failure to train officers in the use of dogs).

■ At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers. *Lenard v. Argento*, 699 F.2d 874 (7th Cir.1983); *Kite v. Kelley*, 546 F.2d 334 (10th Cir.1976). If the defendant was in a position of responsibility, knew or should have known of the misconduct, and yet failed to act to prevent future harm, a cause of action would be stated under § 1983. *McClelland v. Facteau*, 610 F.2d 693 (10th Cir.1979). A supervisor or police chief, however, is not an insurer of liability for those under his command.

■ Again, plaintiffs' allegations against the supervisors and police chief are insufficient as a matter of law. The complaint against the police chief and supervisors is dismissed.

### III.

### Plaintiffs' Negligence and Punitive Damages Claims

The second cause of action complains that (a) all defendants were negligent inso-far as they did not use reasonable care before initiating the chase, and (b) that the supervisors, police chief, police department, and city were negligent in not establishing the proper guidelines, training, and supervision to prevent injuries to plaintiff Chris Boren. The substance of this charge of failure to train is very similar to the first cause of action, but it is couched in terms of negligence rather than a § 1983 violation. The allegations amount to nothing more nor less than state law negligence claims.

■ When a federal court's subject matter jurisdiction is based upon a federal question, the court possesses the power to exercise pendent jurisdiction over state law claims if two conditions are met. First, "[t]he federal claim must have substance sufficient to confer subject matter jurisdiction on the court." Second, "[t]he state and federal claims must derive from a common nucleus of operative facts, ... such that [plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). *See also Garcia v. Wyckoff*, 615 F.Supp. 217 (D.Colo.1985); *Christiansen v. Phelan*, 607 F.Supp. 470 (D.Colo. 1985).

■ In this case, the first condition for pendent jurisdiction is not met. Because the federal statutory claims are dismissed, there is no basis for pendent jurisdiction over plaintiffs' state negligence claims. Further, because of probable jury confusion, I would not be inclined to exercise pendent jurisdiction even if there were a viable federal claim. The state claims are properly addressed in a state court. Plaintiffs' second cause of action, therefore, is dismissed.

The third cause of action seeks punitive damages for defendants' willful and wanton disregard for the rights and feelings of plaintiffs. Punitive damages are allowed in § 1983 actions. In this case, however, there is no § 1983 action in which punitive

damages can be recovered. Plaintiffs' third cause of action is dismissed.

It is therefore ORDERED that:

1) defendants' motion to dismiss plaintiffs' first cause of action for failure to state a claim under § 1983 is granted;

2) plaintiffs' second cause of action is dismissed under the doctrine of pendent jurisdiction; and

3) plaintiffs' third cause of action is dismissed.