**Elaine Loretta Butler NYGREN: Srul Ruda: Sylvia Ruda: and R & R Operating Company, a Colorado corporation, Plaintiffs,**

v.

**Daniel J. PREDOVICH: Richard E. Schockley: Jane Does Nos. 1–10; and National Medical Services, Inc., a Pennsylvania corporation, Defendants.**

Civ. A. No. 86–K–170.

United States District Court,
D. Colorado.

June 25, 1986.

Lee D. Foreman, Haddon, Morgan & Foreman, Denver, Colo., for plaintiffs.

Martin D. Buckley, Peter D. Bornstein, Berenbaum & Weinshienk, Denver, Colo., for National Medical Services.

William F. Eggert, Hall & Evans, Denver, Colo., for Predovich & Shockley.

Ralph Harden, Larimer Co. Atty., Fort Collins, Colo., for County.

Guy Till, Asst. Atty. Gen., Denver, Colo., for State.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This matter is now before me on defendants' motions to dismiss pursuant to Fed.R. Civ.P. 12(b).[1] Before considering the parties' arguments, I shall set forth the relevant facts.

### I. BACKGROUND FACTS

On October 28, 1982, William Fentress, a patient at the Twin Pines Nursing Home in Loveland, Colorado, died. On that date, Twin Pines was operated by plaintiffs Srul and Sylvia Ruda. Also, at that time, plaintiff Elaine Nygren was employed as the director of nursing.

An autopsy was performed by the county coroner on October 29, 1982. During the autopsy, defendant Richard Shockley, an investigator with the coroner's office, obtained four tubes of Fentress' blood. In

---

1. Originally, defendants Predovich and Shockley brought their motion as one to dismiss under Fed.R.Civ.P. 12(b). At that time, I deemed the issues raised as more properly the subjects of a motion for summary judgment under Fed. R.Civ.P. 56. Thus, I issued an order stating the motion would be treated as one for summary judgment. Since then, I have reconsidered this decision. I now find that Rule 12(b) is the proper method by which to resolve these issues. Accordingly, the motion shall be dealt with as it was originally brought.

November, 1982, Shockley shipped two of these tubes to Roche Biomedical Laboratories in Denver, Colorado, with instructions that blood alcohol level and forensic drug screen tests be performed. These tests revealed no alcohol and only the drug diazapam (Valium) to be present in Fentress' blood. The presence of diazapam (Valium) was confirmed by Fentress' medical history and records as having been a drug prescribed for use in Fentress' medical treatment. Shockley failed to instruct Roche to return any blood not used in testing. Nevertheless, the two tubes, which contained only a portion of the blood, were sent back to the coroner's office.

After receiving the results of the tests, Shockley sent a third tube of Fentress' blood to Roche for a quantitative determination of the diazapam (Valium). Again, Shockley failed to instruct Roche to preserve all blood not used in the testing process. Nevertheless, this second series of tests did not consume all of the blood and a small quantity was returned to the coroner's office.

By January, 1983, Fentress' death was under investigation by the Colorado Attorney General's office for possible criminal prosecution. Defendant Daniel Predovich, an investigator employed by the Colorado Attorney General, was assigned to this criminal investigation. On January 19, 1983, Predovich contacted the coroner's office and ordered additional blood tests to determine whether chlorapromazine (Thorazine) was present in Fentress' blood. Apparently, two persons who worked at the nursing home told Predovich they had overheard Nygren ordering another nurse to inject Fentress with chlorapromazine (Thorazine) on the day that Fentress died. On January 20, 1983, the fourth tube of blood was sent by Shockley to Roche for testing. The tests, which were performed in California, failed to detect any chlorapromazine (Thorazine). Once again, instructions for preservation of any remaining blood were not given to Roche. This time, however, Roche discarded the blood left over from the tests in the routine course of its business.

On February 4, 1983, Predovich again contacted Shockley and ordered further tests on Fentress' blood for chlorapromazine (Thorazine). At Predovich's direction, Shockley sent the remaining partial tubes to Roche with instructions that Roche forward the blood to defendant National Medical Services, Inc. (NMS) in Pennsylvania. NMS was informed that the tests were requested in connection with a criminal or civil action and that the blood samples were the only ones left in existence. NMS was not, however, specifically instructed to preserve any blood not used in the tests. Additionally, NMS was not informed about the results of the previous tests conducted by Roche.

The tests for chlorapromazine (Thorazine) were performed by NMS and all remaining blood was discarded. NMS concluded chlorapromazine (Thorazine) was present in Fentress' blood. It was later determined, however, that the tests chosen and utilized by NMS were incapable of distinguishing diazapam (Valium) from chlorapromazine (Thorazine). Before this error was discovered, Nygren and R & R Operating Company were charged with second degree assault in connection with Fentress' death.

In October, 1985, NMS withdrew its expert conclusion that chlorapromazine (Thorazine) was present in Fentress' blood. Because there was no reliable scientific basis for the conclusion that chlorapromazine (Thorazine) had been injected into Fentress, all criminal charges against Nygren and R & R were dismissed in January, 1986, upon motion of the prosecution.

Thereafter, Nygren, R & R, and the Rudas brought this action against Predovich, Shockley, and NMS. In their amended complaint, plaintiffs assert defendants violated and engaged in a conspiracy to violate their constitutional rights. More specifically, in their first claim for relief, brought pursuant to 42 U.S.C. §§ 1983 and 1988, plaintiffs allege defendants conspired to deprive them and did deprive them of

their security of person and freedom from arrest, except upon probable cause, supported by oath or affirmation, guaranteed by the Fourth Amendment ...; their right not to be deprived of liberty or property without due process of law, guaranteed by the Fifth and Fourteenth Amendments ...; their right to prepare a defense to criminal charges, guaranteed by the Sixth Amendment ...; and ... [their] right to the equal protection of the laws guaranteed under the Fourteenth Amendment ....

Plaintiffs' Amended Complaint ¶ 42 at 9. In addition to this civil rights claim, plaintiffs assert state law claims for negligence, false arrest, false imprisonment, malicious prosecution, infliction of emotional distress, and outrageous conduct.

## II. MOTIONS TO DISMISS

Defendants have moved to dismiss plaintiffs' claim under § 1983 for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

A § 1983 claim should not be dismissed unless it clearly appears the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. See *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Kennedy v. Meacham,* 540 F.2d 1057, 1060 (10th Cir.1976); *Boren v. City of Colorado Springs,* 624 F.Supp. 474, 476 (D.Colo. 1985). Two elements are required to state a claim for relief under § 1983: (1) the defendant acted under color of state law, and (2) the defendant's actions deprived the plaintiff of some rights, privilege, or immu-

nity secured by the constitution or the laws of the United States. See *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155–56, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978); *Wise v. Bravo,* 666 F.2d 1328, 1331 (10th Cir. 1981).

### A. *Plaintiffs' § 1983 Claims Against Defendants Shockley and Predovich*

Shockley and Predovich do not dispute they were acting in their official capacities under color of state law. Thus, they do not challenge the first element of plaintiffs' § 1983 claim. Rather, these defendants maintain that plaintiffs were not deprived of any right secured by the constitution or laws of the United States.

Plaintiffs' assertion that their due process rights were violated is based on the theory that the blood samples constituted exculpatory evidence which was suppressed since all of the samples were destroyed. Under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), suppression of such evidence violates a criminal defendant's right to due process under the Fourteenth Amendment. See also, *United States v. Bagley,* —— U.S. ——, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

Defendants contend there is no evidence the samples were exculpatory. Accordingly, it is asserted they were under no duty to preserve the blood samples. Defendants therefore argue the due process clause was not implicated and, thus, plaintiffs' due process claim must be dismissed as a basis for their § 1983 claim.

Plaintiffs respond by asserting § 1983 protects individuals from the failure to preserve, or the destruction of, *potentially* exculpatory evidence in violation of their constitutional right to due process of law. Plaintiffs then cite three cases where courts have held that where the government or its agents frustrate the preservation of exculpatory evidence, in violation of *Brady,* the criminal defendant has a constitutional claim under the due process clause which may be remedied pursuant to § 1983.

*See McDonald v. Illinois,* 557 F.2d 596, 603 (7th Cir.), *cert. denied,* 434 U.S. 966, 98 S.Ct. 508, 54 L.Ed.2d 453 (1977); *Hilliard v. Williams,* 516 F.2d 1344, 1349 (6th Cir. 1975), *vacated on other grounds,* 424 U.S. 961, 96 S.Ct. 1453, 47 L.Ed.2d 729 (1976); *Carter v. Harrison,* 612 F.Supp. 749, 758 (E.D.N.Y.1985).

 I need not address these arguments, however, because the *Brady* rule only implicates a criminal defendant's due process right *to a fair trial. See Bagley,* — U.S. —, —, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481, 491; *Agurs,* 427 U.S. 97, 114, 96 S.Ct. 2392, 2402; *Brady,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196. The purpose of the *Brady* rule is "to ensure that a miscarriage of justice does not occur." *Bagley,* — U.S. —, —, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481, 489 (footnote omitted). There simply is no constitutional violation unless suppression of the evidence deprived the defendant of a fair trial. *See Bagley,* — U.S. —, —, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481, 490; *Agurs,* 427 U.S. 97, 108, 96 S.Ct. 2392, 2399. In the instant case, there was no trial because the criminal charges were dismissed. Thus, the destruction of the blood samples did not lead to a miscarriage of justice by depriving plaintiffs of a fair trial. Accordingly, I find plaintiffs' due process rights were not violated and cannot form the basis of an action under § 1983.

Next, defendants challenge plaintiffs' allegation that their Sixth Amendment right "to prepare a defense to criminal charges" was violated. Defendants construe this allegation to mean that plaintiffs contend they were deprived of effective assistance of counsel by defendants' failure to preserve the blood samples. It is asserted this basis for plaintiffs' § 1983 claim must be dismissed because no allegation has been made that there was any interference with this right separate and apart from the due process issue.

 I agree with defendants. Plaintiffs have failed completely, both in their amended complaint and responsive brief, to show how they were denied effective assistance of counsel. I can find no basis for this claim; especially in light of the fact that the criminal charges were dismissed and plaintiffs were not denied due process. Thus, this alleged constitutional violation may not be used to support plaintiffs' § 1983 claim.

Third, defendants contend plaintiffs' allegation that their Fourth Amendment rights were violated must be dismissed. In essence, plaintiffs have asserted their right to be free from arrest except on probable cause was violated since there was no reliable scientific basis to believe Fentress had been injected with chlorapromazine (Thorazine). Defendants argue plaintiffs are collaterally estopped from asserting this issue because a state district judge ruled probable cause existed to support the charges.

 The doctrine of collateral estoppel applies to a federal plaintiff's Fourth Amendment claim where the issue of probable cause was raised in earlier state court proceedings. *See, e.g., Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Plaintiffs contend, however, that the probable cause determination was based on NMS' erroneous tests and conclusions. An error free proceeding is not constitutionally mandated. Plaintiffs are entitled to the full protection of their Fourth Amendment rights, but there is no nexus between the use of a non-differential chemical test and the purpose for which § 1983 was intended. It may be that negligence can form the basis of a § 1983 violation, but not under the circumstances presented here. *See Boren,* 624 F.Supp. 474, and cases cited therein.

 Finally, defendants assert, and I agree, that plaintiffs' equal protection claim is fatally defective because there are no allegations of intentional discrimination or that plaintiffs belong to any protected class of persons. *See Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

In summary, for the reasons stated above, defendants' motion to dismiss is granted. Plaintiffs' assertions of violations of their rights to due process, effective assistance of counsel, freedom from arrest except on probable cause, and equal protection are dismissed as bases for plaintiffs' direct claim under § 1983.[2]

### B. *Pendent Claims*

 Included within Predovich's and Shockley's motion to dismiss is a request that I decline to exercise pendent jurisdiction over plaintiffs' state law claims. I have the power to exercise pendent jurisdiction in this case because plaintiffs' federal claim for violation of certain constitutional rights is substantial and confers subject matter jurisdiction. Also, the state and federal claims derive from a common nucleus of operative facts. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Exercise of this power is, however, discretionary. *Id.* I decline to exercise this power in the instant case for reasons which I have previously stated:

> First, many of the common law claims, particularly outrageous conduct, are not grounded in sure-footed readings of the applicable law by state courts. *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139. Second, consideration of divergent state claims raised in the context of a section 1983 suit will likely lead to jury confusion. *Id.* at 727, 86 S.Ct. at 1139. Third, the state claims tend to expand the scope of the coverage and remedy provided for under section 1983. *[Kerby v. Commodity Resources, Inc.],* 395 F.Supp. [786,] 790 [(D.Colo.1975) ]. Fourth, because it "appears that the state issues substantially predominate ... in terms ... of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *Gibbs,* 383 U.S. at 726–7, 86 S.Ct. at 1139.

*Christensen v. Phelan,* 607 F.Supp. 470, 473 (D.Colo.1985).

### C. *Plaintiffs' § 1983 Claims Against NMS*

It is asserted plaintiffs' § 1983 claim against NMS must be dismissed, pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted. NMS has also moved for dismissal on the ground that personal jurisdiction over NMS is lacking.

NMS asserts, first, that it was not acting under color of state law when it conducted the blood tests and, thus, it cannot be held liable under § 1983 for the alleged violations of plaintiffs' constitutional rights. NMS argues it is a private forensic research laboratory which was clearly acting in its private capacity in conducting the tests; especially since the tests were performed at the request of another private party, Roche, and NMS has no connections or contracts with the state.

Plaintiffs, on the other hand, contend the testing of physical evidence is a traditional government function generally performed by law enforcement agencies. According to plaintiffs, where private parties voluntarily elect to perform such functions, they act "under color of state law."

 Plaintiffs are correct in their assertion that state action may be found where a private party performs a traditional government function. I cannot find, however, that scientific testing of physical evidence constitutes a traditional state function. The instant case is distinguishable from other cases where state action has been found in that NMS was not acting pursuant to a state statute and laboratory testing does not rise to the level of an essential public function. *See, e.g., Janusaitis v. Middlebury Volunteer Fire Dept.,* 607 F.2d 17 (2d Cir.1979) (volunteer fire department performed an essential public function and had clear attributes of sovereignty); *United States v. Hoffman,* 498 F.2d 879 (7th Cir.1974) (private railroad of-

---

**2.** I need not address defendants' argument that they are entitled to immunity since this issue involves questions of fact which must be submitted to the jury.

ficers had powers under state statute comparable to municipal police officers); *Scott v. Vandiver,* 476 F.2d 238 (4th Cir.1973) (county employees were enlisted as temporary law enforcement officers); *De Carlo v. Joseph Horne & Co.,* 251 F.Supp. 935 (W.D.Pa.1966) (private company's detectives acted pursuant to state statute in making arrests). Thus, NMS cannot be held liable under § 1983 for allegedly violating plaintiffs' constitutional rights.

NMS may, however, be deemed to have acted under color of state law and, thus, be found liable under § 1983 for conspiracy if NMS agreed with state officials to engage in a prohibited action in violation of plaintiffs' constitutional rights. *See Goichman v. Rheuban Motors, Inc.,* 682 F.2d 1320, 1322 (9th Cir.1982); *see also Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *Stypmann v. San Francisco,* 557 F.2d 1338 (9th Cir. 1977). Yet, plaintiffs have failed to state factual allegations in their amended complaint which would establish the existence of any agreement between NMS and the state defendants to deprive plaintiffs of their civil rights. Such failure requires dismissal under Rule 12(b)(6). *See Sooner Products Co. v. McBride,* 708 F.2d 510, 512 (10th Cir.1983).

Since I find plaintiffs have failed to state claims for relief against NMS under § 1983, I need not address NMS' contention that personal jurisdiction is lacking.

IT IS THEREFORE ORDERED:

1. Shockley's and Predovich's motion to dismiss is granted. Plaintiffs' § 1983 claim is dismissed.

2. Plaintiffs' state law claims are dismissed, but without prejudice. These claims may be pursued in the state courts.

3. NMS' motion to dismiss is granted. The pendent claims are dismissed without prejudice.

4. Each party shall bear his, her, or its own costs. This case is dismissed.