# UNITED STATES COURT OF APPEALS
## Tenth Circuit
### Byron White United States Courthouse
### 1823 Stout Street
### Denver, Colorado 80294
### (303) 844-3157

Patrick J.  Fisher, Jr.
Clerk

Elisabeth A. Shumaker
Chief Deputy Clerk

February 10, 1999

**TO:**   ALL RECIPIENTS OF THE OPINION

**RE:**   97-1427, *Morgan v. Gertz*
Filed on February 8, 1999, by Judge Briscoe.

The slip opinion filed February 8, 1999, contains typographical errors.

A corrected opinion is attached for your convenience.  Please discard the opinion issued previously.


Very truly yours,
Patrick Fisher, Clerk


Trish Lane
Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 8 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ALBERT LANE MORGAN,

   Plaintiff-Appellant,

   v.

AMY GERTZ; KAREN WORDEN,

   Defendants-Appellees.

No. 97-1427

**Appeal from United States District Court**
**for the District of Colorado**
**(D.C. No. 95-Z-1344)**

John M. Case, of John Case, P.C., Englewood, Colorado, for the appellant.

Brad D. Bailey, Clear Creek County Attorney, Georgetown, Colorado, and David R. Brougham, of Hall & Evans, L.L.C., Denver, Colorado, for the appellees.

Before **EBEL**, **BRISCOE**, and **LUCERO**, Circuit Judges.

**BRISCOE**, Circuit Judge.

Plaintiff Albert Morgan appeals the district court's entry of summary

judgment in favor of defendants in this 42 U.S.C. § 1983 action.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

This § 1983 action arose out of the investigation and subsequent criminal prosecution of Morgan for sexual assault of his minor stepdaughter.  On April 12, 1993, the natural father of a seven-year-old girl phoned Amy Gertz, a case worker with the Department of Social Services in Clear Creek, Colorado, to report possible sexual abuse of the girl by Morgan, the girl's stepfather.  Gertz and Karen Worden, a police detective, interviewed the girl on April 13 and the conversation was recorded.  During the interview, the girl gave no indication she had been the victim of sexual abuse.  As a result, Gertz closed the case, placed the interview tape in her desk, and advised the natural father to take the girl to a therapist.

Approximately six and one-half weeks later, the natural father contacted Worden and explained the girl had disclosed specific details of sexual abuse.  Worden notified Gertz and they arranged a second interview of the girl on June 1.  Prior to the interview, Gertz reviewed her notes from the earlier interview.  After the girl arrived for the second interview, Gertz searched for a blank tape but was unable to locate one.  She believed the "distraught" girl needed to be immediately interviewed and decided to tape over the recording of the earlier interview.  In the

second interview, the girl alleged she had been sexually assaulted by her stepfather on two occasions during the previous Christmas season. During subsequent examinations by various doctors, the girl elaborated on her allegations of sexual abuse and she underwent physical examinations that revealed injuries consistent with sexual abuse. Worden prepared an affidavit requesting issuance of an arrest warrant for Morgan.

Based on the physical evidence and the girl's statements in the second interview, the county prosecutor charged Morgan with aggravated incest and sexual assault on a child by a person in a position of trust. The prosecutor was fully aware the girl had denied sexual abuse in her first interview, but that did not deter him from charging Morgan.

On a number of occasions during pretrial discovery in the criminal case, the prosecutor disclosed that the girl had denied any sexual abuse during her first interview. In addition, the prosecutor presented the tape of the second interview which, unknown to him, contained remnants of the first interview. After concluding the prosecutor's summary of the first interview was an inadequate substitution for the actual tape, Morgan filed a motion to dismiss all charges based on intentional destruction of exculpatory evidence. At a subsequent motions hearing, Gertz and Worden testified as to the girl's statements at the first interview. At the conclusion of the hearing, the court denied Morgan's motion to

dismiss. The court sanctioned the prosecution, however, by barring it from calling Gertz or Worden as witnesses in its case-in-chief.

The criminal trial commenced on March 28, 1994, and Morgan called Gertz and Worden as witnesses. Both were subjected to intense direct examination regarding the handling of the first interview tape. At the close of all evidence, Morgan moved for judgment of acquittal based in part on intentional destruction of exculpatory evidence. The court reserved ruling on the motion pending the jury verdict. The jury returned a guilty verdict on April 4, but the court did not enter a judgment of conviction. On April 21, after concluding the prosecution had contravened the dictates of Brady v. Maryland, 373 U.S. 83 (1963), the court entered a judgment of acquittal, noting:

> Caseworker Gertz and Detective Worden taped over the first interview, knowing at the time that that evidence which they were altering was exculpatory. The Court further finds that at the Motions Hearing on December 15, 1993, both Detective Worden and Caseworker Gertz gave testimony to the Court which was false and inaccurate concerning what happened during the initial interview. . . .
> . . . .
> The Court finds that the government misconduct in this case was willful and egregious. . . .
> It is impossible to reconstruct what happened during the crucial initial interview. In the absence of such evidence, the defendant cannot have a fair trial.

App. I at 9-10.

Morgan filed this action in May 1995, seeking damages for the mishandling of exculpatory evidence prior to trial. Both sides moved for summary judgment.

- 4 -

Morgan argued the doctrines of res judicata and collateral estoppel barred defendants from relitigating the constitutional violations found by the state court. Defendants maintain Morgan's constitutional rights were not violated and, in any event, defendants are shielded from liability by qualified immunity. The district court denied Morgan's motion for summary judgment in a minute order. At a subsequent hearing, the court granted defendants' motion in part after concluding entry of the judgment of acquittal provided Morgan all the remedy to which he was entitled. The court then granted the remainder of defendants' motion in a written opinion, concluding Morgan had demonstrated no "evil intent" on the part of defendants, thus negating any entitlement to punitive damages.

II.

This court reviews a grant of summary judgment de novo, applying the same legal standard used by the district court. Sundance Assocs., Inc. v. Reno, 139 F.3d 804, 807 (10th Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. If there is no genuine issue of material

fact in dispute, then we next determine if the substantive law was correctly applied by the district court." Wolf v. Prudential Ins. Co. , 50 F.3d 793, 796 (10th Cir. 1995) (internal citation and quotations omitted).

III.

The issue presented is whether Morgan has a right to recover any damages, nominal or otherwise, pursuant to 42 U.S.C. § 1983 for the alleged intentional destruction of exculpatory evidence before his criminal trial. Although the parties argued at length in their appellate briefs regarding the question of whether defendants violated Brady v. Maryland in failing to preserve exculpatory evidence, the real question is whether Morgan's constitutional rights were violated as a result of defendants' actions.

Before addressing the issue on its merits, we note two preliminary points. First, Brady v. Maryland , which focuses on the duty to *disclose* exculpatory evidence, was not implicated in the state court proceedings. The state did not fail to disclose the fact that the girl did not inculpate Morgan in the first interview; the state provided Morgan with a written summary of the first interview. The case of Arizona v. Youngblood , 488 U.S. 51 (1988), which sets forth standards governing the duty to *preserve* exculpatory evidence, is controlling here. Second, the state court's determination in Morgan's criminal trial that defendants committed constitutional violations is not binding in this civil action as there is

no privity between the parties.    See Kinslow v. Ratzlaff  , 158 F.3d 1104, 1105-07 & n.3 (10th Cir. 1998);    Maryland Cas. Co. v. Messina   , 874 P.2d 1058, 1061 (Colo. 1994) (en banc) (describing elements of collateral estoppel under Colorado law).

"Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.  The first step in any such claim is to identify the specific constitutional right allegedly infringed."   Albright v. Oliver  , 510 U.S. 266, 271 (1994) (citations and internal quotations omitted).  Morgan alleges defendants violated his Fourteenth Amendment substantive due process rights by destroying exculpatory evidence. In recent years, the Supreme Court has consistently emphasized its reluctance to broaden the concept of substantive due process out of a concern that "the guideposts for responsible decisionmaking [by potential defendants] in this unchartered area are scarce and open-ended."    Id. at 271-72 (quoting   Collins v. Harker Heights  , 503 U.S. 115, 125 (1992)).

The duties to disclose and preserve impeachment/exculpatory evidence are grounded in the due process right to a     *fair trial* . Kyles v. Whitley  , 514 U.S. 419, 434 (1995);  United States v. Bagley   , 473 U.S. 667, 678 (1985);   United States v. Agurs , 427 U.S. 97, 104 (1976);   Brady , 373 U.S. at 87.  Thus, the withholding or destruction of evidence violates a criminal defendant's constitutional rights only

if, as a result of the withholding or destruction of evidence, the criminal defendant is denied a fair trial.   Bagley, 473 U.S. at 678.  The question here is whether defendants' actions deprived Morgan of his right to a fair trial.

Cases involving § 1983 actions brought by individuals alleging violations of constitutional rights arising out of lack of disclosure or preservation of exculpatory evidence in criminal prosecutions fall into two distinct categories.  In the first group of cases, all criminal charges were dismissed prior to trial.  Under such circumstances, courts have held universally that the right to a fair trial is not implicated and, therefore, no cause of action exists under § 1983.   See Rogala v. District of Columbia, 161 F.3d 44, 55-56 (D.C. Cir. 1998) (per curiam);   Taylor v. Waters, 81 F.3d 429, 435-36 & n.5 (4th Cir. 1996);   McCune v. City of Grand Rapids, 842 F.2d 903, 907 (6th Cir. 1988);   Nygren v. Predovich, 637 F. Supp. 1083, 1087 (D. Colo. 1986).  In the second group of cases, convictions were obtained and affirmed on direct appeal, but were subsequently overturned by way of collateral proceedings.  In these cases, courts have permitted the exonerated defendant to pursue § 1983 claims based on the denial of a fair trial.   See McMillian v. Johnson, 88 F.3d 1554, 1566-69 & n.12 (11th Cir. 1996);   McDonald v. Illinois, 557 F.2d 596, 603 (7th Cir. 1977).

The present case fits within the first group of cases.  Although the jury returned a guilty verdict against Morgan, a judgment of conviction was never

entered. A conviction is effective only upon entry of judgment by the trial court.

Hellman v. Rhodes, 741 P.2d 1258, 1259 (Colo. 1987) (en banc) (citing Colo. R. Crim. P. 32(c)).

> Pursuant to Crim. P. 32(c), a judgment of conviction is composed of a recital of the results of several procedural steps, not all of which necessarily occur simultaneously. It is not until the last step has been completed, whether it be sentencing or the imposition of costs, and a judgment has been entered reciting "the plea, the verdict or findings, the sentence, the finding of the amount of presentence confinement and costs, if any are assessed against the defendant," that the [conviction becomes final].

Id. at 1259-60. [1] The only judgment the court entered was a judgment of acquittal. Regardless of any misconduct by government agents before or during trial, a defendant who is acquitted cannot be said to have been deprived of the right to a fair trial.

The judgment of the district court is AFFIRMED.

---

[1] The same is true under the federal rules. See Howard v. United States, 135 F.3d 506, 509 (7th Cir. 1998) (citing Fed. R. Crim. P. 32(d)(1)).