GWIN, District Judge,
specially concurring:
With the motion for rehearing, Judge Gould has withdrawn his concurrence in the holding that a Brady claim cannot be made where there has not been a conviction. Some wisdom supports avoiding constitutional questions where cases can be decided on other grounds. See Ashwander v. TVA, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) (“The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of’); see also Citizens United v. Federal Election Com’n, — U.S.-, 130 S.Ct. 876, 937, 175 L.Ed.2d 753 (2010) (Stevens, J., concurring in part and dissenting in part.)
Until recently, however, we would have been required to address the constitutional issue before addressing any Section 1983 immunity issue. See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), overruled by Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). And, deciding the materiality issue somewhat begs the question: material to what constitutional right? See, e.g., Stop the Beach Renourishment, Inc. v. Florida Dept. of Environmental Protection, — U.S. -, 130 S.Ct. 2592, 2604, 177 L.Ed.2d 184 (2010) (“In sum, Justice BREYER cannot decide that petitioner’s claim fails without first deciding what a valid claim would consist of.”) Because Plaintiff Smith must show both a violation of a constitutional right and that the failure to disclose was material, I believe we should have addressed whether a constitutional right was impaired before moving to whether any violation was material.
In addition to finding that the non-disclosed evidence was insufficiently important to undermine confidence in the outcome of Smith’s trial, I would also find that Smith cannot make a Brady claim where there has been no conviction.
Smith makes a novel argument. In most Brady-based § 1983 claims, the plaintiff has suffered a criminal conviction, arguably because the government failed to disclose exculpating evidence. But no jury ever convicted Smith. Instead, Smith says he was injured by the five months hé spent in jail after the first trial and until the judge in his second trial dismissed the charges against him.
Three of our sister circuits have found that a defendant who is ultimately acquitted cannot maintain a Brady claim. See Morgan v. Gertz, 166 F.3d 1307, 1310 (10th Cir.1999) (“Regardless of any misconduct by government agents before or during trial, a defendant who is acquitted cannot be said to have been deprived of the right to a fair trial.”); Flores v. Satz, 137 F.3d 1275, 1278 (11th Cir.1998) (“Plaintiff ... was never convicted and, therefore, did not suffer the effects of an unfair trial. As such, the facts of this case do not implicate the protections of Brady.”); McCune v. City of Grand Rapids, 842 F.2d 903, 907 (6th Cir.1988) (holding that “[bjecause the underlying criminal proceeding terminated in appellant’s favor, he has not been injured by the act of wrongful suppression of exculpatory evidence” and thus cannot maintain Brady-based § 1983 claim); cf. also Taylor v. Waters, 81 F.3d 429, 435-36 *942 (4th Cir.1996) (finding that no settled Fourth Amendment authority prohibited officer from withholding exculpatory evidence from § 1983 plaintiff who was never tried on underlying criminal charges). No known cases have allowed a Brady-based § 1983 claim where there has not been a conviction.[1]
Moreover, although the Seventh Circuit has not completely foreclosed Brady-based § 1983 claims without a conviction, it requires the plaintiff to show that no trial would have occurred if police had disclosed the exculpatory or impeachment evidence. See Bielanski v. County of Kane, 550 F.3d 632, 644 (7th Cir.2008) (expressing doubt that “ ‘an acquitted defendant can ever establish the requisite prejudice for a Brady violation,’ ” but concluding that plaintiff’s claim fails where “the decision to go to trial would not have been affected by the allegedly withheld evidence”) (citation omitted); Mosley v. City of Chicago, 614 F.3d 391, 397 (7th Cir.2010) (same).
These courts logically find that an acquitted defendant fails to establish a Brady violation because he cannot show “that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.” Kyles v. Whitley, 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (emphasis added). See also Banks v. Dretke, 540 U.S. 668, 699, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004) (“[Defendant] must show a reasonable probability of a different result.”); Strickler v. Greene, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (plaintiff must show “there is a reasonable probability that the result of the trial would have been different if the suppressed documents had been disclosed to the defense”).
These decisions accord with the purpose of Brady. At its core, Brady seeks to ensure a fair trial, a trial whose verdict is reliable. As the Brady Court explained: “The principle ... is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused.” Brady, 373 U.S. at 87-88, 83 S.Ct. 1194.
In dissent, Judge Nelson seems to argue that Brady requires punishment of police or prosecutors when they fail to turn over arguably exculpatory evidence, even where no conviction results. Judge Nelson says that if Brady is not interpreted to allow civil actions where there has been no conviction, it will give “perverse incentives for police and prosecutors who believe they will not successfully convict a particular criminal defendant [ ] to suppress evidence, knowing that the suppression would not result in a successful Brady claim and the suspect would at least be subject to a lengthy criminal trial.”[2] But, of course, this presupposes that police or prosecutors would, or could, accurately calculate whether a conviction would occur — and they would make this calculation knowing that if they were wrong in predicting ac *943 quittal and a conviction resulted instead, they would face civil liability for their Brady violation. It seems extraordinarily unlikely that police or prosecutors make this calculation.
And, as described below, we allow false arrest and malicious prosecution claims where police or prosecutors lack probable cause to arrest or prosecute defendants. Such claims better focus consideration to the appropriate issue: did the undisclosed Brady material undermine probable cause to arrest or prosecute Smith.
Against this backdrop, Smith says our decision in Haupt v. Dillard, 17 F.3d 285 (9th Cir.1994), allows his Brady claim even though he never suffered a conviction. I believe Haupt distinguishable, find it was based upon a Supreme Court holding that has since been overruled, and find little reason to apply it to this case.
In Haupt, during a conference on jury instructions for Haupt’s murder trial, the judge indicated to counsel that he intended to give the jury an instruction recommending acquittal. 17 F.3d at 287. The prosecutor objected, and the investigating police officer later telephoned the judge and told the judge to say that giving an acquittal recommendation would be ridiculous. Id. The judge declined to give the recommendation, noting that he felt intimidated by the officer’s statement. Id. Nevertheless, the jury acquitted the defendant, who then brought a § 1983 claim against the officer for depriving him of the right to a fair trial. Id.
We held that the plaintiff stated a claim for violation of his due process right to a fair trial — i.e., the right to “get the unbiased judge to which he was entitled,” id.— and that his acquittal “sp[o]k[e] only to the amount of damages he suffered” and was “irrelevant to whether he has a cause of action,” id.[3]
In reaching this conclusion, we relied upon Cooper v. Dupnik, 963 F.2d 1220 (9th Cir.1992) (en banc), a case that allowed a § 1983 action for a Miranda violation even though the suspect was never charged and the statement was never used. But in 2003 — after Haupt—the Supreme Court overruled Cooper. See Chavez v. Martinez, 538 U.S. 760, 766, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003) (Thomas, J.) (“We fail to see how, based on the text of the Fifth Amendment, Martinez can allege a violation of this right, since Martinez was never prosecuted for a crime, let alone compelled to be a witness against himself in a criminal case.”); id. at 778-79, 123 S.Ct. 1994 (Souter, J., concurring in judgment) (“I do not ... believe that Martinez can make the ‘powerful showing,’ subject to a realistic assessment of costs and risks, necessary to expand protection of the privilege against compelled self-incrimination to the point of the civil liability he asks us to recognize here.”).
Thus, Haupt is distinguishable because it involved a claim for violation of the general due process right to a fair trial— not, as here, a Brady claim. Moreover, Haupt relied upon authority that has since been overruled. Finally, Haupt is inconsistent with Brady’s rationale of ensuring a verdict worthy of confidence. I do not believe this Court should extend Haupt to Smith’s Brady claim.
In addition, extending Brady to cases without a conviction makes the materiality standard far less workable. In Smith’s case, to show a reasonable probability that the result of the first trial would have been different, Smith would need to show that *944 none of the jurors in his first trial would have voted to convict if presented with Nelson’s false claim that she saw Smith gloating at the fire scene. Such a calculation (whether there is a reasonable probability that the undisclosed evidence would have caused all the jurors to acquit) is significantly different from the calculation in a post-conviction Brady claim (whether there is a reasonable probability that the undisclosed evidence would have caused a single juror to vote to acquit).
Allowing Brady-based § 1983 claims without a conviction would open the door to a potentially unlimited number of such claims for decisions at every stage of the criminal process. If a police officer failed to disclose victim statements until the start of trial (resulting in a mistrial), and the defendant was jailed for 530 days before retrial but ultimately acquitted, would the defendant have a § 1983 claim? See Williams v. Krystopa, No. 98-CV-1119, 1998 WL 961375, at *4 (E.D.Pa. Dec. 16, 1998) (“Plaintiff ultimately did receive a fair trial because [the victim] statement was uncovered in time for its effective use at trial. Moreover, the trial court was able to reach a just conclusion: it declared a mistrial when testimony showed Plaintiff had not received the witness statements, and held a full trial at which Plaintiff, then in possession of the statements, was acquitted. ... [Jjustice finally did prevail and Plaintiff received a fair trial and a verdict worthy of confidence.... [Thus,] no Brady violation occurred.”), aff'd 211 F.3d 1263 (3d Cir.2000) (unpublished). Would a police officer’s failure to provide a defendant with exculpatory evidence support a § 1983 claim where the defendant incurred defense costs but the criminal charges were dismissed before trial? See Morgan, 166 F.3d at 1310 (in cases where all criminal charges were dismissed prior to trial, “courts have held universally that the right to a fair trial is not implicated and, therefore, no cause of action exists under § 1983”) (citing cases). Our inability to find a principled way to limit these types of Brady claims is therefore a further reason against recognizing the claim Smith makes here.
Recognizing Brady as a post-conviction right does not foreclose all constitutional remedies where a defendant has been tried but not convicted. Where a criminal defendant believes that withheld exculpatory evidence has caused charges to be brought and maintained against him, but no conviction has resulted, his remedy would flow from a false arrest or malicious prosecution claim, and not from Brady.
Indeed, on appeal and as discussed above, Appellant Smith principally argues that the district court erred in granting summary judgment on Smith’s false arrest and malicious prosecution claims. And in some circumstances, a law enforcement official’s non-disclosure could support a false arrest claim, although Smith would need to show that “the magistrate would not have issued the warrant with false information redacted, or omitted information restored.” Lombardi v. City of El Cajon, 117 F.3d 1117, 1126 (9th Cir.1997).
And, even without a right under Brady to make a claim for non-disclosure without a conviction, Smith could also make a claim for malicious prosecution. Indeed, maintaining a successful malicious prosecution claim requires that the defendant be acquitted, or at least that the criminal proceedings did not result in his conviction. See Restatement (Second) of Torts, 653 (1977). But, like false arrest claims, “probable cause is an absolute defense to malicious prosecution.” Lassiter v. City of Bremerton, 556 F.3d 1049, 1054-55 (9th Cir.2009).
Thus, a damaged defendant can obtain a remedy for the non-disclosure of evidence, *945 irrespective of his conviction or acquittal. Where non-disclosure of exculpatory evidence leads to a defendant’s conviction, he may certainly bring a claim under Brady. When the non-disclosure leads to a mistrial or acquittal, the defendant’s opportunity for constitutional remedy lies in claiming malicious prosecution or wrongful arrest, but the non-disclosure in such cases should not support a Brady claim.
In sum, allowing Brady-based § 1983 claims without a conviction is not compelled by our circuit’s case law, conflicts with other circuits’ ease law and the central purpose of Brady, would render Brady ’s materiality standard significantly less workable, and lacks a limiting principle. I would therefore not allow § 1983 claims for alleged Brady violations by a defendant who is ultimately acquitted.

. With her dissent, Judge Nelson relies only upon cases — most of them habeas cases— where there had been a conviction. See, e.g. Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (Habeas action where petitioner had been convicted of murder and sentenced to death.); Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (Same); United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (Same); Morris v. Ylst, 447 F.3d 735 (9th Cir.2006) (Same); Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (Direct appeal after conviction for passing forged money orders).

. Although I have presided over at least 400 state and federal felony trials — including a large number that resulted in acquittals — I admit that I am less capable of predicting an acquittal than the police officers described by Judge Nelson.

. On its own terms, Haupt seems questionable, even when Cooper was good law. While ex parte contacts from an investigating police officer to a judge are completely improper, the judge ultimately had the responsibility to properly instruct the jury.