D.W. NELSON, Circuit Judge,
dissenting:
I respectfully dissent. I disagree with the majority’s assessment of the materiality of the suppressed evidence in this case. I also strongly disagree with Judge Gwin’s concurrence regarding the scope of Brady. These issues will be addressed in turn.
From the start, however, it is important to note that this is a case in which the defendant spent over seventeen months in jail, from the date he was charged in July 2003, through two trials resulting in hung juries, until the trial judge finally dismissed the case on December 14, 2004. Even absent the withheld evidence, seven jurors voted to acquit Smith in the first trial. In the second trial, eleven out of twelve jurors voted to acquit him. The majority holds that the suppressed evidence was immaterial, despite the fact that this evidence could have been used to impeach the credibility of Marilyn Nelson, the witness whose testimony was used to establish Smith’s motive for committing the crime in the first place. Absent police misconduct, I believe there is a reasonable probability that Smith would have been acquitted. Therefore, I dissent.
I
Smith argues that Sergeant Almada violated his due process rights by failing to disclose material exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Such evidence is material under Brady if (1) it is favorable to the accused either because it is exculpatory or impeaching, (2) it was suppressed by the government, and (3) prejudice ensued as a result. Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). In this case, there is no debate as to whether the suppressed evidence was favorable to Smith or suppressed by the State. The only issue is whether the suppression of the evidence was prejudicial.
The Supreme Court has made it clear that prejudice is established “if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.” Id. at 280, 119 S.Ct. 1936 (internal quotations marks and citations omitted); see also Banks v. Dretke, 540 U.S. 668, 698-99, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004). In addressing this reasonable probability standard, the Court has emphasized that the “adjective is important.” Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). In other words, “[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.” Id. (emphasis added). The relevant question is whether the government’s evidentiary suppression “undermines confi *946 dence in the outcome of the trial.” Id. (internal quotations marks and citations omitted). In this case, Sergeant Almada’s evidentiary suppression did just that.
Even if we ignore the evidence of the earlier fires, as the majority would have us do, the failure to disclose Nelson’s false account of Smith’s gloating at the crime scene was prejudicial. In dismissing this evidence as immaterial, the majority contradicts itself by simultaneously insisting that Nelson’s testimony was not crucial at Smith’s trial and that her testimony helped establish a motive for Smith to commit the arson. Had Almada properly disclosed this evidence, Smith could have used it at trial to impeach Nelson’s credibility as a witness. If she was mistaken about Smith’s presence at the crime scene after the fire, perhaps she was also mistaken about Smith’s comportment during the dispute over the broken consignment item. In other words, the suppressed evidence would have gone a long way towards undermining the other evidence of Smith’s alleged motive. Without that, the only connection between Smith and the crime is the peculiar physical evidence found in the incendiary device. Under these circumstances, there is a reasonable probability that the jury in either of Smith’s criminal trials would have acquitted him.
This is particularly true when one considers the way the jurors voted in Smith’s criminal trials even in the absence of the withheld evidence. A proper application of the reasonable probability standard to this case would have taken into account the fact that the majority of jurors voted to acquit Smith in both of his trials. Even if the majority does not find a reasonable probability of a different outcome in Smith’s first trial, where seven jurors voted to acquit him, it is difficult to see how he has not established a reasonable probability regarding his second trial, where eleven out of twelve jurors voted for acquittal.
What is more, the case relied upon by the majority for a finding of immateriality is easily distinguishable from the facts of this case. In Strickler, there was far more forensic and physical evidence linking the defendant to the crime, and the witness whose impeachment was at issue offered testimony that was cumulative. 527 U.S. at 292-94, 119 S.Ct. 1936. In the case at hand, where the withheld evidence impeaches the credibility of the witness whose testimony was used to establish motive, and eleven jurors out of twelve voted for acquittal even absent the withheld evidence, there is a reasonable probability of a different outcome. In my view, the panel should have held that the evidence Almada failed to disclose was material.
II
Because I believe the suppressed evidence was material, I would also reach the question of whether Brady applies in situations where there has not been a criminal conviction.[1] This is a question of first impression in the Ninth Circuit.
As Judge Gwin’s concurrence indicates, he would hold that a Section 1983 suit can never be based on an alleged Brady violation if the plaintiff was not ultimately convicted. In order to substantiate this view, the concurrence is forced to rely upon the supposed internal logic of Brady itself and the cursory analysis offered by a few other *947 circuits. In effect, the concurrence reduces Brady to a post hoc remedy for criminal defendants who have been subject to an “unfair trial,” Flores v. Satz, 137 F.3d 1275, 1278 (11th Cir.1998), defined narrowly as a trial resulting in a conviction. Morgan v. Gertz, 166 F.3d 1307, 1310 (10th Cir.1999). This approach is based, however, on the logical fallacy that the lack of a conviction necessitates the conclusion that the trial was “fair” for the purposes of Brady. Such a narrow rule would exclude acquittals, hung juries, and even situations in which a judgment of conviction was simply never entered, id., thereby replacing Brady’s broad due process pronouncements with a results-oriented test that loses sight of the roles that police and prosecutors play in “shap[ing] a trial that bears heavily on the defendant,” whatever the verdict. Brady v. Maryland, 373 U.S. 83, 88, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
To further justify this reductive reading of Brady, the concurrence contends that drawing the line at criminal convictions is the only way to keep the floodgates shut on Brady-based Section 1983 claims. This argument ignores, of course, the limits set by the Brady requirements themselves: that the evidence was (1) favorable either because it was exculpatory or impeaching, (2) suppressed by the government, and (3) the nondisclosure prejudiced the plaintiff. Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). As evidenced by the majority’s view of the facts in this case, materiality itself serves sufficiently to restrict the scope of the right afforded by Brady. The presence or absence of a conviction merely speaks to the likelihood of showing a violation.
On balance, the precedent in the Supreme Court and in our Circuit cuts against the idea that the right to the disclosure of exculpatory evidence is vitiated simply because a conviction does not result. See Kyles, 514 U.S. at 434, 115 S.Ct. 1555 (“The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.”); Brady, 373 U.S. at 87, 83 S.Ct. 1194 (stating that purpose of the rule against suppression of evidence is “avoidance of an unfair trial to the accused”); United States v. Agurs, 427 U.S. 97, 104, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (part of the concern is preventing “corruption of the truth-seeking function of the trial process”); Morris v. Ylst, 447 F.3d 735, 742 (9th Cir.2006) (“The animating purpose of Brady is to preserve the fairness of criminal trials.”) (citations omitted); Haupt v. Dillard, 17 F.3d 285, 287 (9th Cir.1994) (“The fact that Haupt ultimately was acquitted speaks only to the amount of damages he suffered; it is irrelevant to whether he has a cause of action.”).[2]
Brady pursues two interdependent goals: it is a judicially enforced mechanism for both protecting the right to a fair trial and discouraging misconduct on the part of police and prosecutors. It is hard *948 to imagine protecting this right without also discouraging misconduct. The concurrence would, nevertheless, have us believe that Brady’s broad statements about due process can be reduced to a backward-looking check on only the most egregious instances of evidentiary suppression— those that result in a conviction. This approach not only distorts Brady and its progeny;[3] it also creates perverse incentives for police and prosecutors who believe they will not successfully convict a particular criminal defendant — in which case it would make sense to suppress evidence, knowing that the suppression would not result in a successful Brady claim and the suspect would at least be subject to a lengthy criminal trial.
The fact that a defendant is fortunate enough to escape conviction does not absolve the state of responsibility for the breach of its Brady obligations. The individual’s right to a fair trial, mandated by the due process clause of the Fifth Amendment, does not hinge on the outcome of criminal proceedings.
In the case at hand, the harm suffered by Smith is obvious, and I cannot conclude that his right to a fair trial was not violated, simply because his trials did not result in a conviction. Again, Smith spent over seventeen months in custody, from the date he was charged in July 2003, through two trials resulting in hung juries, until the trial judge finally dismissed the case on December 14, 2004. Absent police misconduct, Smith might have been acquitted. The two juries knew about his dispute with Nelson, but they did not know about Nelson’s false identification of Smith. Withholding this evidence is precisely the type of conduct that “undermines confidence in the outcome of [a] trial.” United States v. Bagley, 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).
Because the majority holds that the suppressed evidence was immaterial, it was right to avoid the broader question regarding the scope of Brady. Because I would find that the suppressed evidence was material, and that Smith is entitled to seek recovery on the grounds that the government violated its Brady obligations, however, I dissent.

. Because the majority concludes that the exculpatory evidence withheld from Smith was not material, it is unnecessary to use this case to define the scope of Brady. Until we are faced with a case that would otherwise meet the Brady requirements, as construed by the majority, we need not decide whether Brady applies when an unfair trial results in anything other than a conviction.

. The concurrence tries to distinguish Haupt in part because it was based on a Supreme Court decision that has been overruled by Chavez v. Martinez, 538 U.S. 760, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003). However, Martinez was based on a reading of the Fifth Amendment's requirement that ''[n]o person ... be compelled in any criminal case to be a witness against himself.” Id. at 766, 123 S.Ct. 1994 (emphasis in original) (internal quotations omitted). The Süpreme Court found a criminal case to commence with the initiation of legal proceedings, not with police questioning. The case does not control the question whether a criminal defendant can assert a constitutional violation where the trial results in acquittal.

. Since Brady was decided in 1963, the Supreme Court has repeatedly expanded upon its initial insight, holding that the Constitution also requires the disclosure of impeachment evidence, Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), evidence possessed by the government even if not by the prosecutor, Kyles, 514 U.S. at 438, 115 S.Ct. 1555, and evidence not specifically requested by the defense, Agurs, 427 U.S. at 107, 96 S.Ct. 2392.