**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1976
_____

MICHAEL TELZER,
                        Appellant

v.

BOROUGH OF ENGLEWOOD CLIFFS, (Its Directors, Officers, Servants, Agents,
Assignees, Delegates, and/or Employees); ENGLEWOOD CLIFFS POLICE
DEPARTMENT, (Its Directors, Officers, Servants, Agents, Assignees, Delegates and/or
Employees); MICHAEL CIOFFI, Englewood Cliffs Chief of Police; LT. WILLIAM
LARAIA; SGT. GERARD MCDERMOTT; SGT. DANIEL MORRISSEY; POLICE
OFFICER DAVID HILL; POLICE OFFICER RONALD WALDT; JOHN AND JANE
DOES(S) AND XYZ CORPORATIONS(S), fictitious names and parties intending to
designee the entity/entities responsible for causing Plaintiff's cause of action and injuries
and intending to designate then person/persons responsible for causing Plaintiff's cause of
action and injuries
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2:13-cv-04306)
District Judge:  Honorable John M. Vazquez
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 1, 2019
Before:  CHAGARES, BIBAS and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Opinion filed: August 12, 2019)
_____

_____

PER CURIAM

Pro se appellant Michael Telzer appeals from the judgment entered against him in his civil rights case. For the following reasons, we will affirm.

In July 2013, Telzer filed a complaint, presenting various claims arising from his arrest, detention, and subsequent prosecution, based on charges of lewdness and endangering the welfare of a child. Telzer later filed an amended complaint.

Telzer's allegation arise from the following undisputed facts. On July 14, 2011, Telzer was walking along the track at Witte Field in Englewood Cliffs. During this time, Nealy Nusbaum Erber ("Erber") placed a 9-1-1 call, reporting that she had seen a man walking the field with "his self exposed," and that she was at the field with her children. Officers McDermott and Waldt responded to the call; Officer McDermott spoke with Erber and Officer Waldt approached Telzer (as he fit the description that Erber provided in her 9-1-1 call). When Officer McDermott approached Erber, she identified Telzer as the party who had exposed himself. Meanwhile, Officer Waldt approached Telzer, informing him of the report that a white man was exposing himself at the field and asking Telzer to lift his shirt. Telzer complied and Officer Waldt verbally indicated that Telzer's belt was completely unbuckled and his zipper was undone (this conversation was

This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

captured on Waldt's mobile in-car video system). Erber thereafter provided two written statements to the police (on July 14, 2011 and on July 15, 2011).

Telzer was subsequently arrested and indicted by a grand jury on lewdness and endangering charges, see N.J. Stat. Ann. 2C:14-4 & N.J. Stat. Ann. 2C:24:-4. Telzer was tried before a jury, which found him not guilty on both charges. Telzer presented the following claims in his amended complaint: false arrest, false imprisonment, and malicious prosecution in violation of 42 U.S.C. § 1983 and state law; witness and evidence tampering; withholding evidence in violation of Brady v. Maryland; violations of the Fifth and Fourteenth Amendments; supervisory liability based on the failure to train officers; and supervisory liability against Defendant Cioffi.

After discovery, the District Court granted defendants' motion for summary judgment. On appeal, Telzer argues that the District Court's grant of summary judgment was in error since "all material facts are in dispute." See Pro Se Brief, at 4. More specifically, he argues that there was no probable cause to support his arrest, detention, and prosecution, that the District Court ignored several exculpatory statements made by the witness, and that Officer McDermott "coached" the witness and invented the crime.

I.

We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's grant of summary judgment de novo and view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. Montone v. City of Jersey City,

3

709 F.3d 181, 189 (3d Cir. 2013). Summary judgment is proper only if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## II.

The District Court properly granted summary judgment to the defendants on Claims 1 and 2, in which Telzer brought false arrest, false imprisonment, and malicious prosecution claims under 42 U.S.C. § 1983 and state law. To prevail on § 1983 claims based on false arrest, false imprisonment, and malicious prosecution, a plaintiff must demonstrate that the police lacked probable cause to arrest him. See James v. City of Wilkes-Barre, 700 F.3d 675, 680, 682–83 (3d Cir. 2012); Johnson v. Knorr, 477 F.3d 75, 81–82 (3d Cir. 2007). "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964). Necessarily, the analysis is based on the objective facts available to the officers at the time of the arrest. Although the issue of probable cause is usually a factual one, a district court may conclude "that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding." Estate of Smith v. Marasco, 318 F.3d 497,

4

514 (3d Cir. 2003) (quotation marks omitted) (citing Sherwood v. Mulvihill, 113 F.3d

396, 401 (3d Cir. 1997)).  That is the case here, as the District Court correctly held.

The information provided by Erber's 9-1-1 call, Telzer's appearance at the field,

and Erber's subsequent police statements provided the officers with sufficient

information to have probable cause that Telzer violated N.J. Stat. Ann. 2C:14-4

(lewdness) and N.J. Stat. Ann. 2C:24-4 (endangering welfare of children).[1]  See Myers,

---

[1] N.J. Stat. Ann. 2C:14-4(b)(1) states that a person commits lewdness in the fourth degree
if:

> He exposes his intimate parts for the purpose of arousing or gratifying the
> sexual desire of the actor or of any other person under circumstances where
> the actor knows or reasonably expects he is likely to be observed by a child
> who is less than 13 years of age where the actor is at least four years older
> than the child.

N.J. Stat. Ann. 2C:24-4(a)(1)(i) provides that:

> (a)(1) Any person having a legal duty for the care of a child or who has
> assumed responsibility for the care of a child who engages in sexual
> conduct which would impair or debauch the morals of the child is guilty of
> a crime of the second degree. *Any other person who engages in conduct or
> who causes harm as described in this paragraph to a child is guilty of a
> crime of the third degree.*
>
> (b) (1) As used in this subsection:
>
> "Prohibited sexual act" means
>
> (i) Nudity, if depicted for the purpose of sexual stimulation or gratification
> of any person who may view such depiction.

See also State v. Hackett, 764 A.2d 421, 428 (N.J. 2001) (concluding that a jury
reasonably found a defendant guilty of endangering the welfare of a child when, inter

5

308 F.3d at 255.  In Telzer's opposition to the defendants' motion for summary

judgment, Telzer concedes that Erber's 9-1-1 call indicated that she observed a man

walking around the park "with his self exposed," and further stated that she was at the

park with her kids.  See dkt # 71-2, ¶ 4–6.  When officers arrived at the scene, Erber

identified Telzer as the man who had exposed himself.  See dkt # 66-7, at 25; dkt # 66-6,

at 131.  Upon approaching Telzer, Officer Waldt asked Telzer to lift up his shirt, and

Officer Waldt noted that Telzer's zipper was down and open, and his belt was unbuckled.

See Id.; dkt # 66-7, at 7–8.  Though Telzer disputes this fact, it is corroborated by the

audio recording by Officer Waldt's mobile in-car video system.  See Scott v. Harris, 550

U.S. 372, 380–81 (2007) (explaining that, at the summary judgment stage, courts should

"view[] the facts in the light depicted by the videotape").  Telzer explained his

appearance to Officer Waldt by describing himself as "a sloppy dresser."  Dkt # 66-7, at

---

alia, the defendant "allowed himself to be viewed naked, through an unobstructed
window, by girls who were age thirteen and under").

25.[2] Given these undisputed facts, probable cause for the arrest existed as a matter of law. See Marasco, 318 F.3d at 514.[3]

In addition, Erber provided two statements to police, one the day of the incident and one the following day, which are both consistent with her 9-1-1 call. See dkt # 66-6, at 89, 91. Though not included in her first statement, Erber's second statement indicated that, after the incident, her nine-year-old daughter told her that she too had seen Telzer's "privates" when at the field. Id. at 91. Telzer argues, but provides no facts to support his argument, that this addition in her second statement (and all subsequent testimony) was due to "coaching" by Officer McDermott. See Pro Se Brief, at 4–13. See Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 218 (3d Cir. 2015) (noting that the party opposing summary judgment "must point to specific factual evidence showing that there is a genuine dispute on a material issue requiring resolution at trial"). In any event, we note,

---

[2] The recording from Officer Waldt's mobile in-car video system does not show the conversation that took place between Officer Waldt and Telzer, but the conversation can be heard on the recording. Officer Waldt is heard stating that Telzer's zipper was down and belt was unbuckled. Telzer did not dispute that characterization of his appearance at the time of the conversation, but instead explained that his appearance was due to him being a "sloppy dresser."

[3] Telzer argues that a strap of his shorts was sticking through his cargo shorts and that Erber apparently confused this for Telzer exposing himself. Although this might explain why a finder of fact was not able to find him guilty beyond reasonable doubt, the test here is simply one of probable cause. Even if Erber had been mistaken about what she saw, the report, the identification of Telzer, and Telzer's statement about being a "sloppy dresser" demonstrate the existence of probable cause.

the fact that Erber's daughter also saw Telzer exposing himself is further confirmed by Officer Morrissey's supplemental police report, which stated that the daughter told him that she also saw Telzer's privates hanging out of his pants while at the field. See dkt # 66-7, at 62. Thus, based on these facts, the District Court was correct to conclude that there was no genuine issue of material fact and that there was probable cause[4] to arrest and prosecute Telzer with lewdness and endangering the welfare of a child.[5]

Telzer has made numerous arguments against probable cause. On appeal, Telzer argues that the District Court's conclusion was in error due to "[e]xculpatory [s]tatements" Erber made to the offers. Pro Se Brief, at 2–4. However, the exculpatory statements Telzer points to in his brief merely show Erber doubting herself and worrying whether the police will have enough evidence. They do not, as Telzer suggests, exculpate Telzer of the charges or create a dispute of material facts regarding the

---

[4] In addition to the above discussion of probable cause, "in a [§] 1983 malicious prosecution action . . . a grand jury indictment or presentment, [which occurred in this case,] constitutes prima facie evidence of probable cause to prosecute." Rose v. Bartle, 871 F.2d 331, 353 (3d Cir. 1989).

[5] The District Court analyzed Claims 1 and 2 under 42 U.S.C. § 1983 as well as under the New Jersey Civil Rights Act ("NJCRA") and New Jersey common law. Because § 1983 claims and NJCRA claims are analyzed nearly identically, the District Court correctly analyzed them together. See, e.g., Trafton v. City of Woodbury, 799 F.Supp.2d 417, 443 (D.N.J. 2001); see also Hedges v. Musco, 204 F.3d 109, 121 n.12 (3d Cir. 2000). Because the state-law claims all require a showing a probable cause, see Mesgleski v. Oraboni, 748 A.2d 1130, 1139 (N.J. Super. Ct. App. Div. 2000); LoBiondo v. Schwartz, 970 A.2d 1007, 1022 (N.J. 2009), the defendants were entitled to summary judgment as to these claims under New Jersey common law as well.

existence of probable cause.[6] Telzer additionally argues, as he did in the District Court, that the officers coerced Erber and her daughter to lie. However, as noted by the District Court, there is no evidence in the summary judgment record to support this claim, and in fact, statements made by Erber in her deposition flatly refute it. See dkt # 66-6, at 126. Accordingly, the District Court's grant of summary judgment on Claims 1 and 2 was proper.

## III.

In Claims 3 and 4, Telzer argues that the defendants engaged in witness tampering and evidence tampering, in violation of New Jersey criminal laws N.J. Stat. Ann. 2C:28-5(a) and N.J. Stat. Ann. 2C:28-6. Telzer has pointed to no caselaw suggesting that these criminal statutes create a private right of action, and we are not aware of any. The District Court correctly granted summary judgment in favor of the defendants on these claims.

## IV.

In Claim 5, Telzer alleges that the defendants violated Brady v. Maryland, 373 U.S. 83 (1963), by withholding evidence at his criminal trial, including clearer photographs, video recordings, and forensic test results. Telzer asserted this claim

---

[6] In some circumstances, a complaining witness's doubts may prevent a finding of probable cause. Here, however, the fact that Officer Waldt observed Telzer's open zipper and unbuckled belt, which was consistent with Erber's claim, helped establish the existence of probable cause.

against the police officers involved with his arrest.  See Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Div. of State Police, 411 F.3d 427, 443 (3d Cir. 2005) (holding that "police officers and other state actors may be liable under § 1983 for failing to disclose exculpatory information to the prosecutor"), overruled on other grounds by Dique v. N.J. State Police, 603 F.3d 181 (3d Cir. 2010).  We agree that the defendants were entitled to summary judgment on Telzer's Brady claim.  "A Brady violation occurs if:  (1) the evidence at issue is favorable to the accused, because either exculpatory or impeaching; (2) the prosecution withheld it; and (3) the defendant was prejudiced because the evidence was 'material.'"  Breakiron v. Horn, 642 F.3d 126, 133 (3d Cir. 2011).  As we discussed in Smith v. Holtz, "the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense"; instead, the government's failure to disclose evidence rises to the level of a due process violation only if the failure to disclose "undermines confidence in the outcome of the trial."  210 F.3d 186, 196 (3d Cir. 2000).  Because Telzer was acquitted of the charges against him, we conclude that no conduct by the defendants has undermined our confidence in the outcome of the trial and thus this case does not implicate Brady.  See Morgan v. Gertz, 166 F.3d 1307, 1310 (10th Cir. 1999) ("Regardless of any misconduct by government agents before or during trial, a defendant who is acquitted cannot be said to have been deprived of the right to a fair trial."); Flores v. Satz, 137 F.3d 1275, 1278 (11th Cir. 1998) ("Plaintiff, however, was never convicted and, therefore, did not suffer

10

the effects of an unfair trial.  As such, the facts of this case do not implicate the protections of <u>Brady</u>.”).

V.

In Claims 6, 7 and 8, Telzer asserts violations of his rights to due process and equal protection.  These claims were wholly undeveloped in the District Court, as Telzer failed to provide any factual support for them in his amended complaint.  For that matter, it is not clear whether Telzer has argued these claims on appeal.  In any event, we agree with the District Court that summary judgment was proper on these claims.

VI.

In Claim 9, Telzer asserts a claim based on <u>Monell v. Dep’t of Social Servs.</u>, 436 U.S. 658 (1978), alleging that the Englewood Cliffs Police Department and its supervisors are liable for the failure to train Englewood Cliffs’ officers.  In Claim 10, Telzer asserts a claim of supervisory liability pursuant to § 1983 against Defendant Cioffi.  The District Court correctly concluded that the Englewood Cliffs Police Department and Defendant Cioffi were entitled to summary judgment.

“[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.”  <u>Id.</u> at 691.  Pursuant to <u>Monell</u>, Telzer could assert a claim under § 1983 against the police department only if the alleged constitutional violation involved a policy officially adopted by the department or where, although not officially adopted, the

11

violation arose from the local government's "custom." Id. at 690–91; see also Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). Additionally, supervisors are generally not vicariously liable for their subordinates' acts. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Supervisory liability is allowed, however, if the supervisors: (1) "established and maintained a policy, practice or custom which directly caused the constitutional harm"; or (2) "they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." Parkell v. Danberg, 833 F.3d 313, 330 (3d Cir. 2016).

Telzer has not proffered evidence of either an official policy or an unofficial custom that caused his arrest or any other alleged constitutional violation. Furthermore, Telzer failed to raise a genuine issue of material fact regarding the involvement of the Englewood Cliffs Police Department or Defendant Cioffi in any unconstitutional conduct, since Telzer failed to show any violation of his rights. Thus, the District Court properly granted summary judgment on these claims.

VII.

For the foregoing reasons, we will affirm the judgment of the District Court. In addition, we deny Appellant's and Appellees' requests for oral argument. See L.A.R. 34.1(a). Appellant's motion to lodge exhibits is granted; however, we have not

12

considered any commentary on the exhibits that was not presented to the District Court,

see United States v. Donsky, 825 F.2d 746, 749 (3d Cir. 1987), and, to that extent only,

Appellees' motion to strike is granted.